IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| LEON JOHNSON,       )<br>    Plaintiff,       )<br>       )<br>v.       )<br>       )<br>F. DUTY, *et al.,*       )<br>    Defendants.       ) | Civil Action No. 7:22-cv-00340<br><br>By:  Elizabeth K. Dillon<br>       United States District Judge |

**MEMORANDUM OPINION**

Plaintiff Leon Johnson,[1] a Virginia inmate proceeding *pro se*, brought a lawsuit that was severed into several actions, including this one, which involves plaintiff's claim that defendants confiscated plaintiff's kufi and prayer rug in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act (RLUIPA).  (*See* Compl., Dkt. No. 1; Am. Compl., Dkt. No. 14.)  Defendants F. Duty, J.R. Massingill, and Shepherd move for summary judgment.  (Dkt. No. 34.)  This motion will be granted.

I.  BACKGROUND

At all times relevant to this lawsuit, Johnson was housed at Red Onion State Prison (ROSP).  F. Duty was a correctional officer, J.R. Massingill was a Sergeant, and Shepherd was a Lieutenant.

**A. Religious Items**

On June 22, 2021,[2] Johnson received three disciplinary charges and was moved to Restorative Housing.  This is usually a housing unit or area separate from full privilege general

---

[1] Johnson is transgender and refers to herself using feminine pronouns.  The court does so also.

[2] Johnson does not identify a date when her property was allegedly confiscated.  However, Johnson refers to the charges against her and her placement in Restorative Housing in her amended complaint.  (Am. Compl. ¶ 5.)  Therefore, the court construes the amended complaint as alleging that Johnson's religious property was confiscated after she was placed in Restorative Housing.

population.  Inmates are not allowed the same property in Restorative Housing as in the general population.  Because of this, Johnson's property was inventoried and stored until her release from Restorative Housing.  (Mullins Aff. ¶ 5, Encl. A, Dkt. No. 35-1.)

Property inventory sheets show no record that Johnson was in possession of a kufi or prayer rug.  There is a record of prayer oil, which was held in storage until Johnson was released from Restorative Housing on July 22, 2021.  Johnson did not indicate on the property inventory sheets that any of her property was missing, damaged, or not otherwise accounted for in the inventory.  (Mullins Aff. ¶ 6, Encl. A.)

Johnson is not prohibited from possessing a kufi or prayer rug.  These items can be purchased from the commissary and donated items are sometimes made available through the Chaplain.  (Mullins Aff. ¶ 7.)

**B. Exhaustion of Administrative Remedies**

VDOC Operating Procedure (OP) 866.1, *Offender Grievance Procedure*, is a mechanism for inmates to resolve complaints, appeal administrative decisions, and challenge the substance of procedures.  The process provides corrections administrators a means to evaluate potential problem areas and, if necessary, correct those problems in a timely manner.  (Meade Aff. ¶ 4, Encl. A, Dkt. No. 35-1.)[3]  All issues are grievable except those pertaining to policies, procedures, and decisions of the Virginia Parole Board, disciplinary charges, State and Federal court decisions, laws and regulations, and matters beyond the control of the VDOC.  (Meade Aff. ¶ 5.)

Grievances are to be submitted within 30 calendar days from the date of the incident.  Prior to submitting a regular grievance, the inmate must demonstrate that she has made a good faith effort to informally resolve her complaint.  This may be accomplished by submitting an

---

[3] Meade is the Grievance Coordinator at ROSP.  (Meade Aff. ¶ 1.)

informal complaint form to the appropriate department head. Prison staff should respond to the inmate's informal complaint within 15 calendar days to ensure that the informal response is provide prior to the expiration of the 30-day time period in which an inmate may file her regular grievance. When filing a formal grievance, the inmate must attach any required documentation to show her attempt to informally resolve the issue. Only one issue per grievance form is addressed. Grievances must be appealed through all available levels of review to satisfy the exhaustion requirement. (Meade Aff. ¶ 6.)

On August 17, 2021, Johnson filed a Written Complaint (Log No. ROSP-21-INF-01512) complaining that on June 22, 2021, her religious items were lost, missing, or stolen, and she was entitled to have them in Restorative Housing. On September 22, Johnson was advised by Lt. J. Shepherd that her property was inventoried according to policy and procedure. (Meade Aff. ¶ 11, Encl. B.) On September 23, Johnson attempted to file a regular grievance regarding her religious property. The grievance was not accepted for intake due to an expired filing period. Johnson did not appeal this intake decision. (Meade Aff. ¶ 12, Encl. C.)

Meade further avers that Johnson did not file any other complaints, informal or regular, regarding her allegation that religious property was lost on June 22, 2021. (Meade Aff. ¶ 13.) Johnson, however, has provided copies of grievances dated earlier than August 17, 2021, complaining about the loss of religious property on June 22. (*See* Dkt. No. 37-1.) For example, there is a regular grievance, dated July 1, 2021, complaining about the loss of religious item on June 22, 2021. (*Id.* at 3–4 of 24.) There is some confusion about the date because the body of the grievance references an interaction with Shepherd on July 22, 2021. (*Id.* at 3.) This grievance was rejected by Meade as untimely, even though it appears to be timely. (*Id.* at 4.) Another grievance, dated July 23, 2021, also references the loss of a prayer rug and kufi on June

22, 2021.  (*Id.* at 6–7.)  This grievance was rejected by Meade on July 26, 2021, for insufficient information.  (*Id.* at 7.)  There is also a copy of an informal complaint dated July 6, 2021, that references the religious items and listed the date of incident as June 22, 2021.  (*Id.* at 8.)  This had a response from Shepherd stating that his items were inventoried correctly.  (*Id.*)[4]

## II.  ANALYSIS

### A.  Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If the moving party meets this burden, the nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must set forth specific facts showing there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586.  That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence

---

[4] Among the exhibits filed by Johnson in opposition, Johnson provided grievances that were filed in 2022 and are unrelated to the allegations in this lawsuit.  (*See, e.g.*, Dkt. No. 37-1 at 21 of 24, complaining of stolen earbuds).  These exhibits are insufficient to create an issue of fact on the exhaustion issue or the religious exercise claims.

demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25. Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

The court is charged with liberally construing complaints filed by *pro se* litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). At the summary judgment stage, however, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. *See Chisolm v. Moultrie*, C/A No. 4:21-03506-BHH-TER, 2023 WL 3631798, at *1 (D.S.C. May 2, 2023). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

**B. Exhaustion under the Prison Litigation Reform Act (PLRA)**

The court first determines whether Johnson has exhausted her administrative remedies because the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective, and even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks. *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005).

Ordinarily, an inmate must follow the required procedural steps to exhaust her administrative remedies. *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). An inmate's failure to follow the required procedures of the prison administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).

As discussed above, there is a contradiction in the record between Meade's assertion that Johnson waited until August 17, 2021, to file any complaints, informal or regular, regarding her allegations of lost or stolen religious property on June 22, 2021, and the exhibits provided by Johnson which appear to show earlier, and timely, grievances pertaining to the alleged issue.[5] In the court's view, this contradiction, construing the record in the light most favorable to Johnson, creates an issue of fact on whether Johnson actually exhausted her administrative remedies. In other words, while defendants argue that Johnson's complaints were insufficient because they were untimely, it appears to the court, based on the exhibits provided by Johnson, that she may have filed some timely grievances. Thus, defendants have not met their burden to show that there are no genuine issues of material fact regarding exhaustion, and the court considers the merits of the amended complaint.

## C. First Amendment and RLUIPA

Under the Free Exercise Clause of the First Amendment, inmates retain a right to reasonable opportunities for free exercise of religious beliefs without concern for the possibility

---

[5] The court recognizes that Johnson's exhibits are unauthenticated. *See Metcalf v. GEO Group, Inc.*, Civil Action No. 3:19CV842-HEH, 2022 WL 567837, at *5 (E.D. Va. Feb. 24, 2022) (explaining that "unsworn, unauthenticated documents cannot be considered on a motion for summary judgment") (citing *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993)). However, the court finds it appropriate to consider them at this stage because defendants have not challenged their authenticity and the court has no reason to doubt the same. *See, e.g.*, *P.C.R. v. Florida Union Free Sch. Dist.*, No. 16-CV-9778 (KMK), 2022 WL 337072, at *22 (S.D.N.Y. Feb. 4, 2022) (noting that a party is not required to authenticate documents on a summary judgment motion when authenticity is not challenged by the other party).

of punishment.  *See Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam).  RLUIPA similarly "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion."  *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005); *see* 42 U.S.C. § 2000cc-1(a).

RLUIPA and First Amendment claims proceed in two stages.  "At the first stage, which is essentially the same for both claims, the plaintiff must show that the prison's policies imposed a substantial burden on [her] exercise of sincerely held religious beliefs."  *Wright v. Lassiter*, 921 F.3d 413, 418 (4th Cir. 2019).  If plaintiff can make that showing, the court proceeds to the second stage, asking whether the prison's policies are justified despite the burden they impose.  *Id.*  "The standards governing this second stage diverge for RLUIPA and First Amendment claims." *Id.*; *see also Carawan v. Mitchell*, 400 F. Supp. 3d 371, 389 (W.D.N.C. 2019).  Under RLUIPA, the government has the burden to show that its policies satisfy strict scrutiny; "that is, the policies must represent the least restrictive means of furthering a compelling governmental interest."  *Id.* (citing 42 U.S.C. § 2000cc-1(a)).  Under the First Amendment, the plaintiff has the burden to show that the policies at issue are not "reasonably related to legitimate penological interests."  *Jehovah v. Clarke*, 798 F.3d 169, 176 (4th Cir. 2015).

As detailed herein, there is no evidence that defendants took or confiscated any religious items from Johnson, such as a kufi or a prayer rug.  The inventory records from Johnson's placement in Restorative Housing do not show that Johnson possessed those items at that time.  The unsworn allegations in Johnson's complaints and in her brief in opposition to the summary judgment motion do not create a fact dispute on this issue.

To illustrate, in *Solis v. Prince George's Cnty.*, 153 F. Supp. 2d 793 (D. Md. 2001), the plaintiff submitted unsworn statements of several alleged eyewitnesses and an unsworn expert

7

report in opposition to a summary judgment motion. The court explained that it is "well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment," and that "unsworn statements do not qualify as affidavits and are not considered by the Court when ruling on a motion for summary judgment." 153 F. Supp. 2d at 798–99 (citing *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993)). Because "[r]etrieving an affidavit in compliance with Rule 56(e) is not an onerous task," *id.* at 799, the court did not consider the unsworn evidence. Similarly, in *Rodrigues v. Hamilton*, Civil Action No. 7:20-cv-00338, 2021 WL 413530 (W.D. Va. Feb. 5, 2021), the court explained that the plaintiff's original and amended complaint were both unsworn and unverified and thus were not "competent summary judgment evidence." *Id.* at *1. Even though a part of the complaint was titled as an "affidavit," the court found that the evidence was not competent because the document contained "no statement swearing to the truth of its contents or referencing the penalty of perjury." *Id.* Here, neither the original complaint (Dkt. No. 1), the amended complaint (Dkt. No. 14), nor Johnson's response to the summary judgment motion (Dkt. No. 37) contain any sworn statements pertaining to the alleged theft, confiscation, or retention of her religious materials.

Because there are no genuine disputes of material fact regarding any religious items, defendants are entitled to summary judgment because Johnson's right to freely exercise her religion was not subject to any burden.

III.  CONCLUSION

Based on the foregoing, the court will issue an appropriate order granting defendants' motion for summary judgment and entering final judgment in this matter.

Entered: February 2, 2024.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge